IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:24-CV-00028-KDB-SCR

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> NOVANT HEALTH, INC. AND COMMUNITY HEALTH SYSTEMS, INC., <br><br> Defendants. | **ORDER** |

In this action, the Federal Trade Commission seeks a Preliminary Injunction pursuant to Section 13(b) of the Federal Trade Commission Act enjoining Defendant Novant Health, Inc.'s purchase of Lake Norman Regional Hospital and Davis Hospital from Defendant Community Health Systems, Inc.. (Doc. No. 1). It is a significant transaction, and there is broad public interest in the parties' dispute. Indeed, the Court's decision whether or not to allow the hospitals to merge pending the trial on the merits of the FTC's antitrust complaint is specifically governed by the "public interest." Section 13(b) instructs the Court that a preliminary injunction may issue, "[u]pon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest." 15 U.S.C. § 53(b).

Now before the Court are the motions of the Defendants and numerous third parties (Morgan Stanley & Co.; Centene Corporation; Blue Cross and Blue Shield of North Carolina; Aetna, Inc.; CaroMont Health, Inc.; Cigna Healthcare of North Carolina, Inc.; Iredell Memorial Hospital, Inc.; and UnitedHealthcare, Inc.) asking the Court to consider certain testimony and

1

documentary evidence *in camera*; that is, outside of the view of the public. (*See* Doc. Nos. 107, 110, 112, 123, 128, 133, 156, 163, 167, 182 and 183). However, as explained below, there are strict limits on when the Court may appropriately consider evidence privately. The public's right of access to judicial documents and the requirement that we have "open hearings and trials" whenever possible are fundamental pillars of our system of justice. These principles not only allow the public to see for themselves the witnesses and evidence presented but also enable the Court to fully describe and explain the evidence it relies on in reaching its ultimate decision. This openness is particularly important here where the "public interest" must be the touchstone of the Court's ruling.

In this Order, the Court sets out the narrow circumstances in which the Court will consider testimony and other evidence *in camera* and directs the Defendants and third parties to carefully review their requests in light of this Order and where possible further limit the scope of the material sought to be considered *in camera*. Also, because much of the voluminous evidence now sought to be kept secret may ultimately not be presented by the parties or relied on by the Court in its ruling, the Court will defer ruling on any specific requests for confidential treatment until it is necessary to do so.

## I. LEGAL STANDARD

The right of access to judicial records and proceedings pursuant to common law is well-established. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). This right extends to the inspection and the copying of court records and documents, but it is not absolute. *See Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 598 (1982). As explained in *Doe v. Pub. Citizen*, "the right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny," 749 F.3d 246,

2

Case 5:24-cv-00028-KDB-SCR    Document 193    Filed 04/30/24    Page 2 of 11

265–66 (4th Cir. 2014), (citing *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir.2004)).

Moreover, our Court of Appeals has cautioned district courts that the right of public access, whether arising under the First Amendment or the common law, "may be abrogated only in unusual circumstances." *See Pub. Citizen*, 749 F.3d at 262; *Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 178, 182 (4th Cir.1988); *Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 252–54 (4th Cir.1988); *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir.2006) ("The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like a fiat and requires rigorous justification."); *United States v. Cianfrani,* 573 F.2d 835, 851 (3d Cir.1978) ("Public confidence [in the judiciary] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view.").

Thus, the public has a right of access to judicial proceedings that stems from two sources: the common law and the First Amendment. *Rushford*, 846 F.2d at 253; *see also Press–Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 508–09 (1984) (discussing the importance of an open trial as a means of both ensuring and giving the appearance of fairness in the judicial process). Under the more rigorous First Amendment standard, "denial of access must be necessitated by a compelling government interest and narrowly tailored to serve that interest." *Id.*; *see also Press–Enterprise Co.*, 464 U.S. at 509 ("The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."); *Globe Newspaper,* 457 U.S. at 606–07 ("[I]t must be

shown that the denial is necessitated by a compelling governmental interest and is narrowly tailored to serve that interest.").

Because the First Amendment and the common law provide different levels of protection, it is necessary to determine the source of the right of access before a court can accurately weigh the competing interests at stake. *See Va. Dep't of State Police*, 386 F.3d at 576. Here, all the evidence sought to be restricted to *in camera* review relates to the FTC's motion for a preliminary injunction. Although a motion for a preliminary injunction is not technically a dispositive motion, the Defendants urge the Court to recognize that its ruling on allowing the transaction to proceed may determine the continued viability of the transaction and thereby could be "dispositive" in practical effect. In turn, while it argues for a less stringent standard of review with respect to evaluating the likelihood of success, the FTC does not downplay the importance of the injunctive relief it seeks with respect to avoiding the alleged competitive harm of the proposed merger.

Further, the evidence at issue in this case implicates public concerns that are at the core of the interests protected by the right of access: "the citizen's desire to keep a watchful eye on the workings of public agencies ... [and] the operation of the government." *Nixon,* 435 U.S. at 598. The interest of the public and press in access to civil proceedings is at its apex when the government is a party to the litigation. *Pub. Citizen*, 749 F.3d at 271. Indeed, the public has a strong interest in monitoring not only functions of the courts but also the positions that its elected officials and government agencies take in litigation. *See Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp.,* 830 F.2d 404, 410 (1st Cir. 1987) ("The appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch.").

4

Accordingly, under these circumstances, the Court finds that, as in the context of summary judgment, the more stringent First Amendment right of public access applies to this motion for a preliminary injunction. *See Rushford*, 846 F.2d at 252 (applying the First Amendment right of access standard to summary judgment filings and noting "summary judgment adjudicates substantive rights and serves as a substitute for a trial"); *Ctr. for Auto Safety v. Chrysler Grp.*, LLC, 809 F.3d 1092, 1103 (9th Cir. 2016) ("Due to the strong presumption for public access and the nature of the instant motion for a preliminary injunction, Chrysler must demonstrate compelling reasons to keep the documents under seal."); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984) (finding a First Amendment right of access to preliminary injunction proceedings); *Bayer Cropscience Inc. v. Syngenta Crop Prot.*, LLC, 979 F. Supp. 2d 653, 656 (M.D.N.C. 2013) ("The Court concludes that the briefing and exhibits filed in connection with motions seeking injunctive relief are subject to the public's First Amendment right of access."); *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-CV-00066, 2018 WL 10602398, at *1 (W.D. Va. Oct. 30, 2018) (same).

Therefore, to limit access to evidence submitted in this action, the party seeking to seal the documents must make a showing "that the denial [of access] serves an important governmental interest and that there is no less restrictive way to serve that governmental interest." *Rushford*, 846 F.2d at 253. However, courts have recognized that in certain circumstances, "private interests might also implicate higher values sufficient to override (or, in an alternative mode of analysis, to except the proceeding or materials at issue from) the First Amendment presumption of public access." *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 580 (E.D. Va. 2009); *see also Morris v. Cumberland Cty. Hosp. Sys., Inc.*, No. 5:12-CV-629-F, 2013 WL 6116861, at *3 (E.D.N.C. Nov. 13, 2013) ("In the past, this court and others have concluded that

the need to keep confidential proprietary business information or trade secrets may constitute a "higher value" that can overcome both the common law and the First Amendment rights of access in appropriate circumstances."). In sum, applying the First Amendment standard, a party moving to restrict public access to evidence offered or filed in this case "bears a heavy burden." *Jennings v. Univ. of N. Carolina at Chapel Hill*, 340 F. Supp. 2d 679, 681 (M.D.N.C. 2004); *Jones v. Lowe's Companies, Inc.*, 402 F. Supp. 3d 266, 277–78 (W.D.N.C. 2019), *aff'd*, 845 F. App'x 205 (4th Cir. 2021).

Finally, before restricting access, "the district court must follow the procedural requirements as laid out in *In re Knight Publ'g Co.*, 743 F.2d 231 (4th Cir. 1984)." *Id.* These are: 1) the district court must give the public adequate notice that the sealing of documents may be ordered; 2) the district court must provide interested persons "an opportunity to object to the request before the court ma[kes] its decision"; 3) if the district court decides to close a hearing or seal documents, "it must state its reasons on the record, supported by specific findings"; and 4) the court must state its reasons for rejecting alternatives to closure. *In re Knight*, 743 F.2d at 234-235. "Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review." *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004). This approach also reflects the reality that "[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern," *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978), as well as that "the public's business is best done in public," *Cochran v. Volvo Grp. N. Am., LLC*, 931 F. Supp. 2d 725, 727 (M.D.N.C. 2013).

## II.     DISCUSSION

At the outset, the Court notes that the *In Re Knight* factors have been satisfied with respect to this Order. The public has had adequate notice that the sealing / *in camera* treatment of testimony and documents may occur and that interested persons were given adequate opportunity to object by nature of the fact that each motion seeking to restrict public access was docketed. *See Jones*, 402 F. Supp. 3d at 290–91; *Cochran,*  931 F. Supp. 2d at 728 (explaining that docketing the motions to seal was sufficient public notice and noting "[a]ny interested party therefore has had sufficient time to seek intervention to contest any sealing order, but the docket reflects no such action"). Further, to the extent the Court ultimately allows any evidence to be presented *in camera*, it will state its reasons for doing so (as outlined below) and why alternatives were rejected.

Applying the *Rushford* analysis, the Court must decide whether the Defendants and each of the third parties (collectively, "Movants") has articulated any private interest sufficiently compelling and narrowly tailored to defeat the public's First Amendment right of access. Broadly stated, all the parties seeking *in camera* review assert that their testimony and documents allegedly contain confidential and proprietary business and financial information that is not generally disclosed to the public and that the competitive harm that would result from disclosure outweighs any public interest in accessing them.  Having reviewed a sampling of that evidence, the Court believes that Movants generally have a far too expansive view of the evidence which the Court may appropriately remove from public access.

Courts in the Fourth Circuit have often discussed what types of private interests may overcome the First Amendment right of access. *See P & L Dev. LLC v. Bionpharma Inc.*, No. 1:17CV1154, 2019 WL 2079830, at *2 (M.D.N.C. May 10, 2019); *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 580-83 (E.D. Va. 2009). In *Level 3*, the court

7

Case 5:24-cv-00028-KDB-SCR   Document 193   Filed 04/30/24   Page 7 of 11

recognized that "in limited circumstances" some courts have found that "certain" "private interests might also implicate higher values sufficient to override ... the First Amendment presumption of public access." *Id.* at 580. Examples of those private interests include a criminal defendant's Sixth Amendment right to a fair trial, privacy interests of non-parties, trade secrets, attorney-client relationships, and contractual non-disclosure provisions. *Id.* at 580–83 (citing cases from various federal courts). Even so, the courts have been careful to reiterate that these interests outweigh the First Amendment presumption of access only in certain circumstances. *Id.* at 580–83; *P & L Dev. LLC*, 2019 WL 2079830, at *2. Further, the Fourth Circuit "has never permitted wholesale sealing of documents based upon unsubstantiated or speculative claims of harm, let alone harm to a company's reputation." *Doe v. Pub. Citizen*, 749 F.3d 246, 270 (4th Cir. 2014).

The showing made by the Movants must be specific and compelling. While the Movants uniformly state that they would suffer harm as a consequence of the disclosure of this information they almost universally do so only in a conclusory manner and do not specifically explain how the disclosure of what is primarily historical information related to the health care and health care insurance industries over the past several years (or longer) would cause them "significant" *present* harm. Again, a fear of corporate embarrassment or a preference to maintain the confidentiality of business affairs without more particularized proof of a compelling privacy interest is insufficient to support the sealing of court filings over the requirements of the First Amendment. *Id.*

Two factors will be paramount in the Court's decision on whether to restrict public access to any evidence. First, as noted above, the Court will evaluate the amount of actual, present competitive harm that is likely to be caused by the disclosure. That is, not all of a company's internal communications or the business activities and thoughts of its executives and employees are competitively sensitive or important, even though they may well be "confidential" or

8

Case 5:24-cv-00028-KDB-SCR    Document 193    Filed 04/30/24    Page 8 of 11

"proprietary" in the sense they are "non-public." Examples of information which may be protected (most likely through the careful redaction of documents rather than their blanket removal from the public record) are still current confidential prices, competitively important pricing data and specific negotiating positions as distinguished from more generalized discussions related to the factors that go into pricing decisions / negotiations or the overall course of negotiations. Similarly, the competitively significant details of a company's decision to pursue or not pursue various business activities (including purchasing hospitals or the inclusion of hospital networks in insurance plans) might be heard *in camera*, but not evidence of the broader discussions or decisions.

Second, and relatedly, the Court will evaluate the likelihood that the evidence will be important to the public's understanding of the contentions of the parties or relied on by the Court in reaching its ultimate decision. Evidence that the public doesn't need to know and is unlikely to play any role in the Court's ruling is more likely to be reviewed *in camera*. *See Jones,* 402 F. Supp. 3d at 291-92 (citing *McKesson Corp. v. Longistics Transportation, Inc.*, No. 5:09-CV-250-F, 2010 WL 11564989, at *12 (E.D.N.C. Nov. 4, 2010)) (allowing records to remain sealed when they were not relied on by the Court in reaching its decision). For example, it is unlikely that knowledge of some specific pricing or financial details will either be important to the public's understanding of the case or part of the Court's opinion, but relevant (and sometimes detailed) evidence related to hospital operations, finances, health insurance networks, etc. will be critical to the public's ability to evaluate the dispute and the Court's efforts to describe and explain its ruling.

In summary, with respect to any evidence sought to be restricted from public view, the Court will weigh the amount of actual, present competitive harm that is likely to be caused by the disclosure and evaluate the likelihood that the evidence will be important to the public's

9

understanding of the contentions of the parties or relied on by the Court in reaching its ultimate decision.[1] Further, in accordance with the clear authority discussed above, the Movant's showing must be "compelling" to override the public's First Amendment right of access. In other words, the Court intends to consider and try this matter publicly to the fullest extent appropriate.

### III. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. The Court's ruling on the Movants' *in camera* motions is deferred as discussed above; and

2. The Movants are directed to promptly and carefully review their requests in light of this Order and where possible further limit the scope of the material sought to be considered *in camera*. (Continued requests for "blanket" review *in camera* will be summarily denied). With respect to evidence for which a Movant continues to seek *in camera* review, it should specify the portion of the evidence it contends must be kept confidential and whether that evidence could simply be redacted in the public record.

---

[1] Some of the Movants have raised additional issues in support of their requests, including the fact that testimony and documents were procured under a protective order and their status as third parties rather than litigants. First, courts in the Fourth Circuit have "made it clear that the mere fact that a document was subject to a blanket protective order does not relieve the parties or a court of the obligation to comply with the Fourth Circuit's otherwise applicable sealing regimen." *Colony Ins. Co. v. Peterson*, No. 1:10CV581, 2012 WL 1047089, at *2 (M.D.N.C. Mar. 28, 2012); *Jones*, 402 F. Supp. 3d at 289. Second, while the Court will of course take into account the source of the evidence in evaluating the relevant factors discussed above, the status of a producing party as a third party or litigant cannot override the rights afforded by the First Amendment.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: April 30, 2024

*Kenneth D. Bell*
United States District Judge