IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:24-cv-00028-KDB-SCR

FEDERAL TRADE COMMISSION,

                              *Plaintiff,*

v.

NOVANT HEALTH, INC.

and

COMMUNITY HEALTH SYSTEMS, INC.,

                              *Defendants.*

**PLAINTIFF'S RULE 62(d) MOTION FOR INJUNCTION PENDING AN EXPEDITED APPEAL OF THIS COURT'S ORDER**

      Plaintiff Federal Trade Commission ("FTC") respectfully moves for an order pursuant to Federal Rule of Civil Procedure 62(d) enjoining the proposed transaction between Defendants Novant Health, Inc. ("Novant") and Community Health Systems, Inc. ("CHS") pending an expedited appeal of the Court's Order and Opinion. Alternatively, the FTC requests that the Court temporarily enjoin the transaction until the Court of Appeals for the Fourth Circuit may rule on an emergency application for an injunction pending appeal that the FTC would file no later than Wednesday, June 12, 2024. Because the FTC must seek relief from the Fourth Circuit should this Court deny this motion, the FTC respectfully requests a ruling on this motion by 12:00 p.m. on Tuesday, June 11, 2024.

      Courts have recognized that limited stays pending appellate review—even in circumstances where the district court has held against the FTC—are necessary for "the fair,

effective administration of justice." *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072, 1076 (D.C. Cir. 1981); *see also* Order Granting Plaintiffs' Mot. Injunction Pending Appeal (Ex. A), *FTC v. Advocate Health Care Network*, No. 15-cv-11473 (N.D. Ill. June 17, 2016), ECF No. 482 (granting motion for injunction pending appeal from district court's decision denying plaintiffs' motion for a preliminary injunction). Immediate, temporary relief is necessary here because Defendants may consummate Novant's proposed acquisition of Lake Norman Regional Medical Center ("LNR"), Davis Regional Medical Center ("Davis"), and related assets from CHS (the "Proposed Transaction") after 11:59 p.m. on June 12, 2024. Temporary Restraining Order, ECF No. 16.

As explained in more detail below, this Court's denial of the motion for a preliminary injunction raises serious, substantial issues for the Fourth Circuit to resolve. Following a seven-day evidentiary hearing, the Court found that the FTC satisfied its prima facie case by showing that the Proposed Transaction is presumptively unlawful in one or more relevant markets. Order at 45-47.[1] The Court also rejected Defendants' primary defense that "LNR is a bad hospital with low quality and low occupancy," noting that "this doomsday characterization is mostly inaccurate and certainly exaggerated." Order at 3. The Court nonetheless denied relief on the basis of LNR's potential future decline. It thus effectively deemed LNR a "weakened competitor," but did not properly apply the Fourth Circuit's test for that defense—which the court of appeals has recognized is rarely successful. *See Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 714-15 (4th Cir. 2021); *see also, e.g.*, *ProMedica Health Sys., Inc. v. FTC*, 749 F.3d 559, 572 (6th Cir. 2014) (characterizing the weakened competitor defense as "the Hail-

---

[1] "Order" refers to the Court's order denying the FTC's request for a preliminary injunction dated June 5, 2024, ECF No. 227.

2

Mary pass of presumptively doomed mergers"); *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1164-65 (9th Cir. 1984) (decisions upholding mergers under the weakened competitor defense have "been criticized by courts and commentators"); *Kaiser Aluminum & Chem. Corp. v. FTC*, 652 F.2d 1324, 1339 (7th Cir. 1981) (noting that the "weakened company" defense is itself "probably the weakest ground of all for justifying a merger").

Apart from the merits, an injunction pending appeal is also necessary to preserve the FTC's ability to obtain effective relief if it were to ultimately prevail. Federal courts have repeatedly explained why divestiture—including in hospital merger cases—is difficult and often impossible. By contrast, an injunction pending appeal will not substantially injure Defendants and is in the public interest. The Court found in its Order that LNR will not be able to sustain its current level of competition "over the next three to five years," particularly after Atrium Lake Norman ("ALN") opens in mid-2025. Order at 48. An appeal will be resolved before that occurs. And to further minimize any harm to Defendants, the FTC will seek an expedited appeal, which in past cases has resulted in decisions as fast as ***four to six months*** after a district court's order. *See, e.g.*, *FTC v. Hackensack Meridian Health, Inc.*, 30 F.4th 160 (3d Cir. 2022) (decided approximately six months after the district court's order); *FTC v. Advocate Health Care*, 841 F.3d 460 (7th Cir. 2016) (four months).

For these reasons, the Court should temporarily enjoin the consummation of the Proposed Transaction while the Fourth Circuit expeditiously resolves Plaintiff's appeal. At the very least, the Court should enjoin the transaction and preserve the status quo pending the Fourth Circuit's ruling on the FTC's forthcoming motion in that court to enjoin the transaction pending appeal.

The FTC has conferred in good faith with Defendants regarding this motion in compliance with Local Rule 7.1(b), and Defendants oppose the relief requested herein.

# ARGUMENT

Federal Rule of Civil Procedure 62(d) provides in relevant part: "While an appeal is pending from an interlocutory order or final judgement that . . . refuses . . . an injunction, the court may . . . grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). Motions for injunctive relief under Rule 62(d) are evaluated using the "traditional" four-factor test applicable to motions to stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 425-26 (2009) (citation omitted); *see Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970). The first two factors of the standard are the "most critical." *Nken*, 556 U.S. at 434.

Here, all four factors support granting an injunction to maintain the status quo pending appeal.

## I. THE FTC AND THE PUBLIC INTEREST WILL BE IRREPARABLY HARMED IF THE MERGER IS ALLOWED TO PROCEED

Consummation of the Proposed Transaction while the appeal is pending will irreparably harm the public interest and the FTC because (1) Defendants will begin integrating their businesses immediately and it will be exceptionally difficult to order a divestiture after that occurs; (2) allowing the transaction to close now will immediately impact competition because the combined firm will begin negotiating rates collectively; and (3) any purported decline of LNR will be at least several years away.

**<u>Integration will be difficult to reverse.</u>** If the Proposed Transaction is consummated, the harm to the public begins immediately. Upon acquiring LNR, Novant plans to take immediate

4

steps that will be costly, difficult, and disruptive to undo in the event the Commission finds the Proposed Transaction unlawful and orders a divestiture. *See* Tr. 1327 (Armato).[2] Specifically, Novant intends to integrate LNR into its health system, transition LNR onto its electronic medical records system, and make significant staffing changes. *See, e.g.*, Tr. 845-47 (Ehtisham), 1500-02 (Oliver). Moreover, if an injunction pending appeal is not granted, Novant and LNR can begin to share confidential business information, like pricing and operational information, and long-term strategic planning information, all of which could facilitate price-fixing or other anticompetitive behavior even if the merger is later unwound.

It would be "extraordinarily difficult to 'unscramble the egg'" if the Proposed Transaction is deemed unlawful after Defendants have integrated their operations, shared competitively sensitive confidential information, and laid off staff. *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 352-53 & n.11 (3d Cir. 2016); *see also FTC v. Whole Foods Market, Inc.*, 548 F.3d 1028, 1033-34 (D.C. Cir. 2008). As the Fourth Circuit has recognized, "Congress intended that if divestiture is practicable and necessary to avoid a § 7 violation, it must be undertaken before the merger is consummated." *FTC v. Food Town Stores, Inc.*, 539 F.2d 1339, 1345 (4th Cir. 1976); *see also FTC v. H.J. Heinz Co.*, 246 F.3d 708, 726 (D.C. Cir. 2001) (divesture is often "inadequate").

The district court's recent experience in *JELD-WEN* is instructive: there, the court ordered a divestiture in October 2018, and yet nearly six years later no divestiture has occurred, and the defendant is arguing the divestiture order should be set aside. *See* Mot. Modify Amended Final Judgment (Ex. B), *Steves & Sons, Inc. v. JELD-WEN, Inc.*, No. 16-cv-545 (E.D. Va. May 1, 2024), ECF No. 2456 *see also JELD-WEN*, 988 F.3d at 707 (referencing 2018

---

[2] "Tr." refers to the transcript of the evidentiary hearing in this matter commencing May 1, 2024.

divestiture order). And in one recent hospital case, it took over two years between the circuit court affirming a divestiture order (on February 10, 2015) and the divestiture transaction finally closing (on May 1, 2017). *See St. Alphonsus Med. Ctr-Nampa Inc. v. St. Luke's Health Sys., LTD.*, 778 F.3d 775 (9th Cir. 2015); Fourth Final Verified Report (Ex. C) at 2, *Saint Alphonsus Med. Ctr., Nampa, Inc. v. St. Luke's Health Sys., LTD.*, No. 12-cv-560-BLW (D. Idaho Dec. 15, 2020), ECF No. 721 at 2 ("The transaction divesting Saltzer from St. Luke's closed on May 1, 2017"). Here too, post-consummation divestiture would be extremely challenging. Once the companies comingle staff, share competitively sensitive information, and integrate clinical programs, it would be difficult and disruptive to subsequently rend those entities apart. For these reasons, the Court was mistaken that "avoiding divestiture problems in the future does not appear to pose a significant concern" because Novant could "sell LNR or Davis" at some later date. Order at 53-54. While the facilities can be sold, no court order can erase the memory of personnel who now would know a competitor's pricing and strategic plans. The harm to competition from any merger will likely be irreversible.

**Integration will immediately impact competition.** In addition to the challenges of a post-consummated divestiture, allowing the Proposed Transaction to close will also immediately affect competition. Absent a stay, Novant could begin renegotiating rates and terms at LNR as soon as 90 days after the Proposed Transaction closes. *See, e.g.*, Order at 53 (accepting "that the reimbursement rates paid by insurers at LNR and Davis are likely to rise substantially after those hospitals are integrated into Novant's insurance contracts"); Order at 24 & n.14 (recognizing that after past acquisitions, Novant has negotiated for lump-sum payments or increased rates throughout its entire system, rather than substantial rate increases solely at the newly acquired

6

hospital); *see also, e.g.*, Tr. 114 (BCBS). All of this will result in ongoing harm to consumers that will be difficult to remedy after the full litigation process runs its course.

**LNR's purported decline will be years away.** To the extent there are any benefits because of the merger, they will still be available after an expedited appellate process. *See Hershey*, 838 F.3d at 353 (courts must often look past merging parties' assertions to see that "[a]ll of the Hospitals' alleged benefits will still be available" if the merger is temporarily enjoined and later held to be lawful). Whatever harm the Court projects for LNR's competitive position is unlikely to occur before this appellate process concludes. The Court found that today, LNR is profitable, Order at 1, 4, its inpatient occupancy has been stable since 2017, Order at 29, it provides "appropriate medical care that is broadly consistent with the care provided at individual Novant hospitals per numerous quality care metrics," Order at 28, and its Leapfrog score "suggest[s] that LNR's quality is good," Order at 28. Any change in LNR's competitive position is at least several years away. As the Court explained, LNR will face alleged difficulties "over the next three to five years . . . , particularly in light of the construction of the Atrium hospital" that is set to open in mid-2025. *Id.* at 48 (quoting Tr. 1574 (Hammons)). An expedited appeal will be completed long before that purported decline would come to pass.

Other facts cited in the Court's Order likewise support a temporary injunction pending appeal. Among other things, LNR has maintained its stable profitability, occupancy rate, and quality, even despite the Court's finding that CHS decided "several years ago" to "focus its limited investment dollars on other hospitals." Order at 31. And while the Court found that LNR has lost certain medical services, Order at 30-31, it also found that even still LNR and Novant Huntersville's "overlapping services account for approximately 95% of discharges," Order at 41, suggesting that today LNR continues to offer a broad suite of critical services to its local

7

community. As for ALN, the FTC's market share analysis assumed that the hospital was already open and operating at full capacity, and thus accounted for a change in LNR's competitive position resulting from ALN's opening. *See* FTC's Proposed Findings of Fact and Conclusions of Law, ECF No. 212 ¶¶ 47-48; *see also id.* ¶ 110 (noting that "LifePoint modeled that LNR will continue to be profitable after Atrium Lake Norman's entry"). Accordingly, with Plaintiff seeking an expedited appeal in the Fourth Circuit, any appellate decision will likely be rendered before the end of the year and well before any harm predicted by the Court. *See* Order at 48 (CHS executive testifying about looking at "the horizon out over the next three to five years").

As for Davis, there is no evidence in the record suggesting that Davis would close during an appeal. CHS has continued to operate Davis during the pendency of this preliminary injunction motion, and there is no reason to believe that they would not continue to operate Davis until the Fourth Circuit is able to render its decision. *See, e.g.*, Order at 48 (CHS testifying that Davis will close "if the sale to Novant does not go forward"). Regardless, because it does not offer "'overlapping' medical services where LNR competes with Novant," Order at 41, the FTC respectfully submits that the hospital is outside the relevant market and so its competitive condition is not relevant to the Court's inquiry under Section 7 of the Clayton Act. *See United States v. Phila. Nat'l Bank*, 374 U.S. 321, 370 (1963) ("If anticompetitive effects in one market could be justified by procompetitive consequences in another, the logical upshot would be that every firm in an industry could, without violating s 7, embark on a series of mergers that would make it in the end as large as the industry leader."). To be clear, however, the FTC does not seek to enjoin Novant's acquisition of Davis with this motion. Novant may acquire Davis at any time the merging parties deem suitable.

## II. THE FTC IS LIKELY TO SUCCEED ON THE MERITS OF THE APPEAL

Granting an injunction pending appeal is also warranted because the FTC is likely to succeed on appeal. The FTC respectfully identifies the following examples of errors in the Court's Order that at a minimum raise substantial and serious questions requiring further appellate review.

### a. Defendants did not establish a weakened competitor defense.

As the Court recognized, the FTC established a prima facie case that the merger will likely weaken competition in the relevant geographic and product markets. Order at 45-47. That meant "the burden shift[ed] to the Defendants to rebut the FTC's case by showing that, even if the FTC's market-concentration evidence is credible, it inaccurately predicts the merger's probable effect on competition." Order at 48. The FTC respectfully submits that the Court erred by alleviating Defendants of this burden and, as discussed more fully in Section II.b. below, by conflating the weakened competitor defense with the failing firm defense.

The Court misapplied the weakened competitor defense in ruling that Defendants rebutted the FTC's prima facie case that the acquisition may substantially lessen competition. As the Court noted in its Order, a defendant may attempt to rebut the FTC's prima facie case by showing that the FTC's market-concentration evidence inaccurately predicts a transaction's probable effect on competition. Order at 48 (citing *JELD-WEN*, 988 F.3d at 703-04). When a defendant argues that its poor competitive performance justifies an otherwise anticompetitive transaction, the defense must be evaluated against the well-established requirements of the weakened competitor defense. *E.g.*, *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 290 F. Supp. 3d 507, 515-16 & n.5 (E.D. Va. 2018) (collecting cases).

The Fourth Circuit in *JELD-WEN* held that the weakened competitor defense requires a defendant to establish that "'the acquired firm's weakness [] . . . cannot be resolved by any

9

competitive means' and 'would cause that firm's market share to reduce to a level that would undermine the [plaintiff's] prima facie case.'" 988 F.3d at 714 (quoting *FTC v. University Health, Inc.*, 938 F.2d 1206, 1221 (11th Cir. 1991)). Further, this decline in market share must be "imminent" and reflect a "steep plummet." *Id.* at 715 (quoting *FTC v. ProMedica Health Sys., Inc.*, No. 3:11 CV 47, 2011 WL 1219281, at *58 (N.D. Ohio Mar. 29, 2011)); *United States v. Ivaco, Inc.*, 704 F. Supp. 1409, 1424-25 (W.D. Mich. 1989). *JELD-WEN* demonstrates how this analysis should proceed. There, the court discussed the merger's Herfindahl-Hirschman Index (HHI) increase in the relevant market, then explained that the defendant "had to show that [the acquirer's] market share would have dropped" to such a level "absent the merger, such that the Index would have remained" within a presumptively lawful distance "of its current score." *JELD-WEN*, 988 F.3d at 715 & n.11. The *JELD-WEN* defendant's argument failed because its "evidence [fell] far short of proving that." *Id.*

Here, the FTC respectfully submits that the Court did not conduct an analysis of how LNR's market share may decline to a level that would undermine the FTC's prima facie case, or on what timeline. Order at 46-51. Nor did Defendants establish that LNR's market share would imminently plummet to a level that undermines the FTC's prima facie case. In fact, the Court rejected Defendants' arguments that LNR faces a declining or particularly low occupancy level. Order at 29. Similarly, the Court found that LNR is currently profitable. Order at 4. Under these circumstances, where LNR is not in any present financial distress, the FTC believes that the Court's Order raises serious and substantial questions of whether the weakened competitor defense was properly applied. *See ProMedica*, 749 F.3d at 572 (rejecting weakened competitor defense where hospital had sufficient cash reserves to satisfy its obligations and meet its capital needs).

10

Case 5:24-cv-00028-KDB-SCR   Document 238   Filed 06/10/24   Page 10 of 18

The Court cited two future events—the opening of ALN and a change in North Carolina's Certificate of Need law—as having the potential to make LNR's future "uncertain." Order at 32-33. But even if the opening of ALN and a change in the law may create headwinds for LNR (a currently profitable, stable hospital) that would be insufficient to justify a presumptively illegal merger. *See JELD-WEN*, 988 F.3d at 714-15. The evidence did not show— and the Court did not find—that LNR's market share absent the merger would have dropped so precipitously that the HHI level post-merger would have been presumptively lawful. *See, e.g.*, *Ivaco, Inc.*, 704 F. Supp. at 1424-25 (holding that "evidence of weakened financial condition and a shrinking market [was] insufficient to demonstrate that the firms' past performance [was] an unreliable indicator of their future ability to compete"); *United States v. United Tote, Inc.*, 768 F. Supp. 1064, 1083-84 (D. Del. 1991) (applying and rejecting weakened competitor defense premised on argument that firm would be unable to keep up with industry changes).

Precedent supports keeping the exceptions in which a competitor's difficulty may excuse an illegal merger narrow. As explained by the Seventh Circuit in *Kaiser*, a firm's struggles are "probably the weakest ground of all for justifying a merger." 652 F.2d at 1339. This is because "[h]istory records and common sense indicates that the creation of monopoly and the loss of competition involve the acquisition of the small and the weak by the big and the strong." *Id.* at 1341. "[T]he financial weakness of the acquired firm, while it may be a relevant factor in some cases, certainly cannot be the primary justification of a merger in resistance to a s 7 proceeding." *Id.*; *accord FTC v. Arch Coal, Inc.*, 329 F. Supp. 2d 109, 154 (D.D.C. 2004) (quoting *Kaiser*, 652 F.3d at 1341). Defendants have not established—and the Court did not find—that LNR's weakness would cause its market share to drop below a level that undermines the FTC's prima facie case, as required to succeed under the weakened competitor defense. The Court therefore

11

Case 5:24-cv-00028-KDB-SCR   Document 238   Filed 06/10/24   Page 11 of 18

should have rejected Defendants' attempt to rebut the presumption of illegality. *See JELD-WEN*, 988 F.3d at 714-15.

### b. Defendants did not establish a failing firm defense.

The Court's suggestion that the Proposed Transaction should be allowed to proceed because these "future external competitive circumstances" may someday cause LNR to close altogether implicates the *failing* firm defense, which applies to failing business units. *See FTC v. Great Lakes Chem. Corp.*, 528 F. Supp. 84, 96 (N.D. Ill. 1981). As an initial matter, Defendants failed to raise the failing firm defense in either their Answers or in their opposition to the preliminary injunction, and thus have waived that defense. *See* Answer, ECF No. 45 (Novant) at 22 (asserting flailing firm/weakened competitor, but not failing firm, defense); Answer, ECF No. 46 (CHS) at 18 (same); Defendants' Opposition, ECF No. 91 (no reference to failing firm defense); Defendants' Proposed Findings of Fact and Conclusions of Law, ECF No. 223 (same); Fed. R. Civ. P. 8(c)(1) (requiring parties to affirmatively state affirmative defenses); *see also Hicks v. Ferreyra*, 965 F.3d 302, 310 (4th Cir. 2020) ("As a general rule, the parties' litigation conduct determines what issues are properly before a court, and a defense may be forfeited if the party asserting it waits too long to raise the point.") (cleaned up).

Further, to succeed on a failing firm defense, Defendants would be required to establish, among other things, a "grave probability of business failure." *FTC v. Univ. Health, Inc.*, 938 F.2d 1206, 1220 n.8 (11th Cir. 1991) (internal quotation marks omitted) (reversing the district court for, among other reasons, improperly crediting a weakened competitor defense). This grave probability of failure must be "imminent." *Dr. Pepper/Seven-Up Cos., Inc. v. FTC*, 991 F.2d 859, 864-65 (D.C. Cir. 1993). Though Defendants sought to paint a bleak picture of LNR's prospects, the Court properly found that Defendants' "doomsday characterization [of LNR] is mostly inaccurate and certainly exaggerated." Order at 3; *see also* Order at 29 ("[T]he evidence

12

does not support [Defendants'] conclusion. Rather, LNR's inpatient occupancy has been stable since 2017 at approximately 33%."). Far from finding that LNR is on the brink of failure, the Court noted that while "LNR's future is decidedly uncertain," Order at 32-33, it is currently profitable. Order at 4. *See Food Town*, 539 F.2d at 1345 (failing firm defense unavailing where company was "solvent and profit-making"). Even when noting "it appears . . . that LNR's competitive position will further erode" to the point where LNR might close, the Court does not pinpoint any timeframe in which this might occur other than to describe its potential occurrence as no sooner or more concrete than "in the foreseeable future." Order at 50. However phrased, Defendants did not establish, and the Court did not find, that LNR is in grave danger of imminent failure. The requirements of the failing firm defense thus are not satisfied, and it is error to allow the Proposed Transaction to proceed because of the possibility of LNR closing at some unspecified future time. *See JELD-WEN*, 290 F. Supp. 3d at 511-12 (collecting cases including *Dr. Pepper/Seven-Up Cos., Inc.*, 991 F.2d at 865).

The Court also credited testimony by a CHS executive that CHS would close Davis absent the Proposed Transaction as a factor supporting Defendants' rebuttal of the FTC's prima facie case. Order at 48. However, neither the Eastern Lake Norman Area nor the Center-City/Northern Charlotte Region Market, which the Court used as the basis for much of its analysis, includes Davis. Order at 43. Effects outside of the relevant market do not excuse an illegal transaction. *See, e.g.*, *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 370-71 (1963); *Miss. River Corp. v. FTC*, 454 F.2d 1083, 1089 (8th Cir. 1972). A statement that CHS would close Davis therefore does demonstrate that the FTC's market-concentration evidence inaccurately predicts the Proposed Transaction's effect on competition in a relevant market.

### c. The Court credited Defendants' efficiencies arguments without applying the appropriate standard.

Finally, the Court concludes that Defendants likely will succeed in rebutting the FTC's prima facie case because Novant's acquisition of LNR will allow Novant to replace lost lines of service, better support the hospital, and better compete with Atrium. Order at 51-52. The argument that benefits of this ilk will offset a transaction's anticompetitive effects is the essence of an efficiencies claim. *E.g.*, *FTC v. Hackensack Meridian Health, Inc.*, 30 F.4th 160, 176-77 (3d Cir. 2022) (allegations of procompetitive benefits from a hospital transaction, including hospital improvements, are an efficiencies defense); *FTC v. Sanford Health*, 926 F.3d 959, 965-66 (8th Cir. 2019) (similar). To establish an efficiencies defense, Defendants must show that any efficiencies are (1) verifiable, (2) merger specific, (3) sufficient to "offset any anticompetitive effects of the merger," and (4) not due to "anticompetitive reductions in output or service." *Hershey*, 838 F.3d at 348-49. For the reasons set forth in the FTC's Proposed Findings of Fact (¶¶ 78-101) and Conclusions of Law (¶¶ 27-32) (ECF 212), Defendants did not carry their burden to show that their claimed efficiencies satisfied this standard. However, rather than applying the efficiencies framework, the Court merely accepted Defendants' claimed efficiencies as "evidence of new future competitive circumstances [that] 'undermine[] the predictive value of the government's statistics.'" Order at 51-52. The Court thus erred by failing to apply the appropriate rigorous standard, which would have led to a rejection of Defendants' efficiencies claims.

### III. AN INJUNCTION PENDING APPEAL WILL NOT SUBSTANTIALLY INJURE DEFENDANTS

Defendants will not be substantially injured by the brief delay during Plaintiff's appeal of this Court's Order. Novant's CEO testified that litigation risk, including any delays resulting

from the appellate process, does not dampen Novant's interest in this acquisition. Tr. 1329-30 (Armato); *see also* Tr. 2045, 2048 (Closing). Moreover, there is no evidence that the merging parties are required to abandon the Proposed Transaction should the Court pause its consummation past June 12, 2024. Accordingly, any alleged harm to Defendants from a brief stay while the appellate process plays out is far outweighed by the substantial public interest in maintaining competition.

## CONCLUSION

For the foregoing reasons, the FTC respectfully requests that this Court grant an injunction pending appeal of this Court's Opinion denying the FTC's motion for a preliminary injunction. Alternatively, the FTC respectfully requests that the Court temporarily enjoin the Proposed Transaction until a ruling by the Court of Appeals on an emergency application for an injunction pending appeal that the FTC intends to file promptly. Due to the imminent deadlines and the difficulty of unwinding the merger once it is completed, the FTC respectfully requests a ruling on this motion by 12:00 p.m. on Tuesday, June 11, 2024.

Dated: June 10, 2024 Respectfully submitted,

/s/ Nathan Brenner
Nathan Brenner (Illinois Bar No. 6317564)
Karen H. Hunt
Nicolas Stebinger
Habin Chung
Jennifer Fleury
Cory Gordon
Christopher Harris
Matthew Joseph
Kennan Khatib
Ryan Maddock
Noel Miller
Susan A. Musser
Louis Naiman
Jeanne L. Nichols
Anusha Sunkara
Goldie Veronica Walker
Kurt D. Walters


Federal Trade Commission
600 Pennsylvania Avenue
Washington, DC 20580
Tel.: (202) 326-2314
Email: nbrenner@ftc.gov
*Attorneys for Plaintiff Federal Trade Commission*

16

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon the following counsel on June 10, 2024, by email and/or CM-ECF:

Heidi Hubbard
Beth Stewart
CJ Pruski
Liat Rome
Kaitlin Beach
Altumash Mufti
Williams & Connolly LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel.: (202) 434-5451
hhubbard@wc.com
bstewart@wc.com
cpruski@wc.com
lrome@wc.com
kbeach@wc.com
amufti@wc.com


Brian S. Cromwell
Caroline B. Barrineau
Parker Poe Adams & Bernstein LLP
Bank of America Tower
620 S. Tryon Street, Suite 800
Charlotte, NC 28202
Tel: (704) 372-9000
Fax: (704) 334-4706
Briancromwell@parkerpoe.com
Carolinebarrineau@parkerpoe.com

*Counsel for Defendant Novant Health, Inc.*

Michael Perry
Jamie France
Scott Hvidt
Thomas Tyson
Logan Billman
Connie Lee
Connor Leydecker
David Lam
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Tel: (202) 887-3558
mjperry@gibsondunn.com
jfrance@gibsondunn.com
shvidt@gibsondunn.com
ttyson@gibsondunn.com
lbillman@gibsondunn.com
clee2@gibsondunn.com
cleydecker@gibsondunn.com
dlam@gibsondunn.com


Adam K. Doerr
Kevin R. Crandall
Robinson, Bradshaw & Hinson, P.A.
101 N. Tryon St. #1900
Charlotte, North Carolina 28246
Tel: (704) 377-8114
adoerr@robinsonbradshaw.com
kcrandall@robinsonbradshaw.com

*Counsel for Defendant Community Health Systems, Inc.*

Respectfully submitted,

*/s/ Nathan Brenner*
Nathan Brenner (IL Bar No. 6317564)
Federal Trade Commission
600 Pennsylvania Avenue
Washington, DC 20580
Tel.: (202) 326-2314
Email: nbrenner@ftc.gov
*Attorney for Plaintiff Federal Trade Commission*