UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>*Plaintiff*,<br><br>v.<br><br>NOVANT HEALTH, INC.<br>and<br>COMMUNITY HEALTH SYSTEMS, INC.,<br><br>*Defendants*. | Case No. 5:24-cv-00028-KDB-SCR<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN INJUNCTION PENDING APPEAL** |

Defendants Novant Health, Inc. ("Novant") and Community Health Systems, Inc. ("CHS") (collectively, "Defendants") respectfully submit this opposition to Plaintiff Federal Trade Commission's ("FTC") motion for an injunction pending appeal (or an injunction pending its forthcoming emergency application for an injunction pending appeal) (ECF No. 238, hereinafter "Motion" or "Mot.") because the FTC seeks the same relief this Court already denied, but now on an engineered "emergency" basis.

## INTRODUCTION

On June 5, 2024, following a seven-day trial featuring 23 witnesses and hundreds of exhibits, this Court denied the FTC's complaint for an injunction under Section 13(b) of the Federal Trade Commission Act. ECF No. 227 (hereinafter "Order"). The parties are therefore authorized to close their transaction this Wednesday, June 12, at 11:59 p.m. ECF No. 16 at 1. Yet, the FTC was silent last Wednesday afternoon after receiving the Court's Order. It said

1

nothing on Thursday. Or Friday. Or Saturday. It was not until Sunday night, at 9:53 p.m., that the FTC notified Defendants that it planned to file a motion for an injunction pending appeal (and it did not file that motion until this afternoon). Having waited a full five days to take any action, the FTC now asks this Court to rule in less than 24 hours so that "no later than Wednesday, June 12"—*one week* since this Court's Order and *the day of* the authorized closing—the FTC can ask the Fourth Circuit to intervene. Mot. at 1.

The FTC's delay appears strategic: an attempt to squeeze the Fourth Circuit so that the Fourth Circuit upends Wednesday's closing by issuing an emergency injunction during its consideration of the FTC's injunction request. Indeed, in other cases where the FTC has sought an injunction pending appeal, it has done so immediately. *See, e.g.*, *FTC v. Thomas Jefferson Univ.*, No. 2:20-cv-01113-GJP, ECF No. 279 (E.D. Pa. Dec. 9, 2020) (motion filed first calendar day after denial of preliminary injunction with closing scheduled seven calendar days after the denial); *see also FTC v. Microsoft Corp.*, No. 3:23-cv-2880-JSC, ECF No. 313 (N.D. Cal. July 13, 2023) (motion filed with district court and Ninth Circuit three calendar days after denial of preliminary injunction with closing scheduled five business days after the denial).[1] And here, the FTC immediately filed a motion to stay a different order last Thursday, which it drafted and filed the very same day that the Court issued that ruling. *See* ECF No. 234 (Order on Sealing) (June 6, 2025); ECF No. 235 (FTC Motion to Stay) (June 6, 2024). The FTC has provided no explanation for its delay in filing the present motion, but it must recognize that any additional delay risks the transaction not being consummated at all.

---

[1] Both the *Microsoft* and *Thomas Jefferson* courts promptly rejected the FTC's motions. *FTC v. Microsoft Corp.*, No. 3:23-cv-2880-JSC, ECF No. 317 (N.D. Cal. July 13, 2023) (denying motion for injunction pending appeal the same day it was filed); *FTC v. Thomas Jefferson Univ.*, No. 2:20-cv-01113-GJP, ECF No. 285 (E.D. Pa. Dec. 14, 2020) (denying motion for injunction pending appeal the first business day after opposition).

Thankfully, given the unilaterally imposed deadline for a decision, the FTC's request can quickly be denied. The Court's reasoning for denying the FTC's request for an injunction under Section 13(b) of the Federal Trade Commission Act (15 U.S.C. § 53(b)(2)) applies equally to the FTC's Motion. For those same reasons, the FTC's Motion here should be denied.

## ARGUMENT

### A. The FTC Already Failed to Meet Its Burden for an Injunction

To prevail on a motion for injunction pending appeal, the FTC must show (1) a likelihood of success on the merits of its appeal of the denial of the preliminary injunction, (2) a likelihood of irreparable harm absent relief, (3) that the injunction will not substantially harm the other party, and (4) that an injunction benefits the public. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also* Fed. R. Civ. P. 62(d); *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970); *In re Revel AC, Inc.*, 802 F.3d 558, 568–69 (3d Cir. 2015); *Tribal Vill. of Akutan v. Hodel*, 859 F.2d 662, 663 (9th Cir. 1988). In evaluating the FTC's request for a preliminary injunction, this Court applied a more lenient standard, requiring only that the FTC raise "questions going to the merits so serious, substantial, difficult and doubtful" to obtain injunctive relief. Order at 10. Under that relaxed standard, the Court made a fact-bound determination, reflected in a 55-page opinion, that the FTC failed to show a likelihood of success on the merits of the relief it seeks, and that the equities favor denial of a preliminary injunction. *Id*. at 52. The FTC did not (and cannot) point to anything that has changed to warrant a different result, particularly under the more demanding standard required by the Federal Rules of Civil Procedure. *Cf. Id.* at 11 (distinguishing the

3

standard for an injunction under Section 13(b) from the standard under the Federal Rules of Civil Procedure).

### B. The FTC Is Unlikely to Succeed on the Merits

The FTC is unlikely to prevail on the merits of its appeal. This alone is fatal to the FTC's Motion. After considering voluminous documentary evidence and live testimony, this Court rendered a fact-bound conclusion "that the commercial realities suggest that the FTC is unlikely to be successful in establishing there may be a substantial lessening of competition as a result of CHS' sale of LNR and Davis hospitals to Novant." *Id.* at 52. The record before the Court strongly supports its finding, and courts of appeals review such fact-heavy determinations only for clear error. *See Perry v. Judd*, 471 Fed. Appx. 219, 223 (4th Cir. 2012); *United States v. U.S. Sugar Corp.*, 73 F.4th 197, 203 (3d Cir. 2023).

This Court denied the preliminary injunction because of transaction-specific evidence that the transaction's competition-enhancing qualities outweighed the FTC's countervailing concerns. The FTC is now limited to attacking this Court's factfinding—an insurmountable challenge given the record and the clear-error standard.

The Court did not err (let alone clearly err) in finding that the transaction "is at least as likely to enhance competition as it is to reduce it," Order at 51; that absent the transaction, "Davis will close" given its $1-million-per-month losses and lack of alternative buyers, *id*. at 48; or that Lake Norman "will not be able to sustain its current level of competition," considering CHS's decisions to "close lines of service" and cut off "additional investments" in that hospital, *id*. This evidence, alongside extensive additional evidence, rebutted any presumption that the transaction would have an anticompetitive effect.

To the extent the FTC now objects that this Court could only credit these considerations if Defendants meet the strict criteria for the 'weakened competitor' or "failing firm" defenses,

4

Mot. at 9, 12, the FTC is mistaken.  The "weakness [of the to-be-acquired firm] undermines the predictive value of the government's market share statistics," *FTC v. Arch Coal, Inc.*, 329 F. Supp. 2d 109, 154 (D.D.C. 2004) (citation omitted), making this evidence relevant to the antitrust analysis even under the FTC's cases.  *See* Order at 37–38, 51–52; *see also United States v. General Dynamics Corp.*, 415 U.S. 486, 498 (1974) (market share statistics are "not conclusive" and district courts should consider the "structure, history and probable future" of the relevant industry).  Here, the "commercial realities" indicate the acquisition is likely to be procompetitive, not just because of Lake Norman and Davis's weak, declining competitive significance and lack of alternative buyers, but also because the transaction will enable Novant and Lake Norman to compete more effectively against Atrium's market dominance.  Order at 49–52.  Additionally, the Court appropriately considered Davis's imminent closure in its evaluation of the equities (respecting the consequences of the injunction writ large).  Indeed, the FTC's belated effort to distance itself from Davis was already evaluated—and rejected—by this Court.  *Compare* Mot. at 8, 13 (arguing that "the FTC does not seek to enjoin Novant's acquisition of Davis" so Davis's closure should not contribute to "[the Court']s analysis"), *with* Order at 5 n.1 (noting "the FTC's recent change in position" on Davis, and concluding there is "no evidence that Novant would purchase Davis outside the presently proposed transaction").  Once again, the FTC tries to ignore the reality of what an injunction would mean: CHS will close Davis.

Contrary to the FTC's arguments, the Court's analysis is consistent with the Fourth Circuit's opinion in *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690 (4th Cir. 2021).  In fact, the Court cited *JELD-WEN* when concluding Defendants should prevail here because they "demonstrate[d] unique economic circumstances that undermine the predictive value of the

5

government's statistics." Order at 48 (quoting *JELD-WEN*, 988 F.3d at 703–04); *see also id*. at 51 (finding that Lake Norman and Davis's current and future states are precisely the type of "unique economic circumstances" contemplated by *JELD-WEN*). And the Court explained at length how "[t]he facts relied on by the court in *JELD-WEN* are different than this case." *Id*. at 49.

In short, the Court took the "competitive circumstances" of the present transaction into account and concluded that, together, they established that the FTC's evidence was insufficient to demonstrate the transaction is likely to "substantially … lessen competition." 15 U.S.C. § 18; Order at 52. None of that was error, much less clear error.

### C. The FTC Cannot Show Irreparable Harm

This Court should independently deny the FTC's request because it has made no "clear showing" of likely irreparable harm absent an injunction. *See Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009), *reissued* 607 F.3d 355.

The FTC seeks an injunction to preserve its "ultimate remedial power" to block the transaction—so the agency must show "why [its] own relief … at the conclusion of the agency process cannot address the violations." *Cf. NLRB v. Bluefield Hospital Co., LLC*, 902 F.3d 432, 440 (4th Cir. 2018) (same inquiry for NLRB injunctions pending NLRB agency adjudications). But here, "there was no evidence presented that it would be any harder to sell [Lake Norman] or Davis than it would be currently if a divestiture were later ordered. In fact, it seems reasonable that a sale might be easier if Novant improves the hospital as it has promised." Order at 53. That finding reflects the reality that only in "rare case[s]" are mergers or acquisitions "truly irreversible." *FTC v. Whole Foods, Inc.*, 548 F.3d 1028, 1033 (D.C. Cir. 2008); *cf. FTC v. Facebook, Inc.*, No. 1:20-cv-03590-JEB, ECF No. 75 (D.D.C. Aug. 19, 2021) (seeking divestiture of decade-old acquisitions).

6

The FTC exaggerates the difficulty of remediation. To do so, the FTC invents "facts" that directly contradict the record and the Court's factual findings. For example, the FTC claims that Defendants will "la[y] off staff." Mot. at 5. But, as the Court noted, the FTC did *not* "present[] evidence concerning whether the doctors and nurses currently working at LNR or Davis would be retained after the sale;" to the contrary, based on the evidence that was provided, the Court correctly "inferred that the medical providers now practicing at LNR and Davis *will generally continue to do so*." Order at 53 n.31 (emphasis added). As another example, while acknowledging that "the facilities can be sold," the FTC nevertheless asserts that "no court order can erase the memory of personnel who now would know a competitor's pricing and strategic plans." Mot. at 6; *see also id*. at 5 (claiming, without citation, that the transaction may "facilitate price fixing"). Such speculative and purely hypothetical claims—made without reference to any authority in the case law or the record—underscores the last-gasp nature of the FTC's Motion.

Finally, nothing suggests that the transaction would inflict "actual and imminent" irreparable harm to consumers or competition. *See Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir. 1991). The FTC sought an injunction to forestall any risk that Novant would "implement higher prices" during the FTC's lengthy in-house administrative process. ECF No. 80 at 35. But, as this Court found, "there was no evidence that the presence of LNR or Novant as competitors had explicitly affected the prices negotiated by Novant or CHS" and "insurers either had no opinion on whether adding LNR to Novant's portfolio would impact rates or they believed there would be little or no impact based on LNR's currently limited competitive position." Order at 24–25. Moreover, Novant addressed what little risk may remain by committing to capping rates and maintaining existing contract terms at Lake Norman and

7

Davis for three years after closing and by agreeing to make significant investments in Lake Norman and Davis "in testimony believed and credited by the Court." *Id*. at 53.

### D. The Equities Disfavor an Injunction Pending Appeal

As this Court has found, countervailing equities and the public interest militate against an injunction. An injunction pending appeal risks irreversibly squandering Lake Norman and Davis's best and only chance at a turnaround. If the transaction is enjoined, Lake Norman and Davis will not be viable competitors; their declining investment rates, reduced services, and competition from Atrium and other area hospitals would impose insurmountable odds. *Id*. at 5. With no other bidders and no CHS plans to invest in turning around these facilities, "Davis will close" and Lake Norman likely "will shortly" close. *Id*. at 5–6. In another attempt at attacking the Court's factual findings, the FTC claims "there is no evidence in the record suggesting that Davis would close during an appeal." Mot. at 8. Not so. The record reflects "CHS' unequivocal testimony . . . that it would close Davis because of the facility's ongoing losses of $1 million a month." Order at 5 n.1 (citing Hr'g Tr. 1576–77 (Hammons)); *see also* DX 460 (CHS email contemplating closure during pendency of litigation). Davis remaining open as a result of the transaction "is clearly in the public interest because its closure would eliminate critically needed inpatient psychiatric services." Order at 54.

The FTC also claims that Lake Norman's decline is "years away." Mot. at 7. Once again, that misstates the facts. The Court did *not* find that the harm is "three to five years" away, as the FTC implies. Mot. at 7; *see also* Order at 48 (citing CHS executive for "three to five years" language). The Court instead identified the "real" competitive "problems" that "long pre-date CHS' decision to sell the hospital to Novant" and that have already contributed to its decline, *id.* at 48–49, and highlighted in particular that: (1) "LNR is unlikely in the near term to resume important services in cardiology, newborn care and oncology;" (2) "there is no plausible

8

alternative buyer for LNR;" (3) Lake Norman faces threats from "the changes in the CON process;" and (4) CHS is in a "difficult financial position" and will therefore not invest, *id*. at 5–6. Based on these facts, the Court concluded, "on its *current* and expected path, LNR can only hope to maintain its already limited competitive position *for a short time.*" *Id*. at 6 (emphases added); *see also id*. (recognizing that these facts "likely will *shortly* lead to [Lake Norman] closing" (emphasis added)).

The importance of the Court's decision cannot be overstated. The FTC (wrongly) claims that "any delays resulting from the appellate process" would "not dampen Novant's interest in the acquisition." Mot. at 14. To be clear: as Novant explained in the portions of the transcript the FTC cites, Novant is willing to proceed *with the closing* despite the overhang of litigation, because it is confident in its position on appeal. But if *the closing* is delayed further, there is no guarantee that the transaction (and, by extension, Davis and Lake Norman) will survive. Indeed, Defendants already have waited for well over a year since signing their merger agreement—the prospect of *any* further delay after this Court's detailed Order denying the preliminary injunction will likely jeopardize the transaction altogether. *See* Fed. R. Civ. P. 62(d) (authorizing district courts to issue an injunction pending appeal on "terms that secure *the opposing party's* rights" (emphasis added)); *FTC v. Thomas Jefferson Univ.*, No. 2:20-cv-01113-GJP, ECF No. 285 at 2 n.1 (E.D. Pa. Dec. 14, 2020) (explaining same). All told, an injunction would harm the non-moving parties, *Hilton v. Braunskill*, 481 U.S. at 776, harm the public, and would "reduce rather than enhance competition." Order at 6.

By contrast, rejecting the FTC's Motion allows Novant to invest immediately in expanding services and revitalizing both Lake Norman and Davis—by "restoring medical services, adding staff, raising salaries, and making investments in equipment and infrastructure."

9

*Id.* at 54. This outcome would significantly increase competition with Atrium and other providers and would benefit patients too. *Id*. at 54–55. Allowing Novant to invest in these hospitals only furthers the public interest, irrespective of the appellate outcomes.

## CONCLUSION

Defendants respectfully request that the Court deny the FTC's request for an injunction pending appeal or pending its forthcoming emergency application for an injunction pending appeal.

Dated: June 10, 2024                                    Respectfully Submitted,

/s/ *Heidi K. Hubbard*
Heidi K. Hubbard (admitted *pro hac vice*)
Jonathan B. Pitt (admitted *pro hac vice*)
Beth A. Stewart (admitted *pro hac vice*)
Carol J. Pruski (admitted *pro hac vice*)
J. Liat Rome (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW Washington, DC 20024
Tel: (202) 434-5000
Email: hhubbard@wc.com
Email: jpitt@wc.com
Email: bstewart@wc.com
Email: cpruski@wc.com
Email: lrome@wc.com

Brian S. Cromwell (N.C. Bar No. 23488)
Caroline B. Barrineau (N.C. Bar No. 51571)
PARKER POE ADAMS & BERNSTEIN LLP
Bank of America Tower
620 S. Tryon Street, Suite 800
Charlotte, NC 28202
Tel: (704) 372-9000
Fax: (704) 334-4706
Email: briancromwell@parkerpoe.com
Email: carolinebarrineau@parkerpoe.com

Alexis James Gilman (admitted *pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5116
Email: agilman@crowell.com

*Counsel for Defendant Novant Health, Inc.*


/s/ *Michael J. Perry*
Michael J. Perry (admitted *pro hac vice*)
Jamie E. France (admitted *pro hac vice*)
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, NW
Washington, DC 20036

11

Tel: (202) 887-3558
Email: mjperry@gibsondunn.com
Email: jfrance@gibsondunn.com

Adam K. Doerr (N.C. Bar No. 37807)
Kevin R. Crandall (N.C. Bar No. 50643)
Robinson, Bradshaw & Hinson, P.A.
101 N. Tryon St. #1900
Charlotte, North Carolina 28246
Tel: (704) 377-8114
Email: adoerr@robinsonbradshaw.com
Email: kcrandall@robinsonbradshaw.com

*Counsel for Defendant Community Health Systems, Inc.*