# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:24-CV-00028-KDB-SCR

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | |
| Plaintiff, | |
| v. | **ORDER** |
| **NOVANT HEALTH, INC. AND COMMUNITY HEALTH SYSTEMS, INC.,** | |
| Defendants. | |

**THIS MATTER** is before the Court on Plaintiff's Rule 62(d) Motion for Injunction Pending Appeal ("Motion") (Doc. No. 238).

On June 5, 2024, the Court entered an Order denying Plaintiff Federal Trade Commission's ("FTC") Complaint seeking a Preliminary Injunction to enjoin Novant Health, Inc.'s ("Novant") purchase of Community Health Systems, Inc.'s ("CHS") Lake Norman Regional Medical Center ("LNR") and Davis Regional Psychiatric Hospital ("Davis") (the "Order"). (Doc. No. 227). Applying the statutory standard of Section 13(b) of the Federal Trade Commission Act, the Court weighed the equities and considered the Commission's likelihood of ultimate success, concluding that entry of an injunction pending the conclusion of the FTC's administrative process would not be in the public interest.

Now, the FTC asks the Court to put in place for an indeterminate time the very injunction the Court decided should not be entered while the FTC pursues a planned appeal to the Court of

1

Appeals for the Fourth Circuit. For the reasons discussed below,[1] including that the FTC ignores the balancing of equities that compelled the Court's decision, the Court again declines to grant the FTC's requested injunction to stop Novant from operating Davis and LNR while this litigation proceeds. However, the Court will grant the FTC's alternate request to briefly extend the period of the existing Temporary Restraining Order to allow the FTC an opportunity to ask the Fourth Circuit to enter an injunction pending appeal.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 62(d) provides in relevant part: "While an appeal is pending from an interlocutory order or final judgement that . . . refuses . . . an injunction, the court may . . . grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). To prevail on a motion for injunction pending appeal, the FTC must show (1) a likelihood of success on the merits of its appeal of the denial of the preliminary injunction, (2) a likelihood of irreparable harm absent relief, (3) that the injunction will not substantially harm the other party, and (4) that an injunction benefits the public. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Nken v. Holder*, 556 U.S. 418, 425-26 (2009) (citation omitted).

## II. DISCUSSION

### A. Likelihood of Success on the Merits

The FTC has not made a strong showing that it is likely to succeed on the merits. In response to the FTC's contention that the Court erred in denying the FTC's requested injunction,

---

[1] The FTC filed its motion at approximately 12:30 p.m. on June 10, 2024, "respectfully requesting" that the Court enter a ruling less than 24 hours later (by 12:00 p.m. on June 11, 2024). While the Court has been able to accommodate the FTC's request, the tight timing only allows the Court to briefly summarize the reasons that support its decision to deny the Motion.

the Court refers to the full substance of its Order in support of its decision and disagrees that the Court's ruling is in error. In arguing its stay motion, the FTC cherry picks language from the Order, distorting the Court's full ruling and reasoning. Yes, the Court found that the FTC had (barely) met the *mathematical* thresholds for a "prima facie" case, but it also explained at length why that limited finding did not – in light of all the commercial realities – lead to a conclusion that the purchase may result in the "substantial lessening" of competition. *See United States v. General Dynamics Corp.*, 415 U.S. 486, 498 (1974) (market share statistics are "not conclusive" and district courts should consider the "structure, history and probable future" of the relevant industry).

Also, while the Court did not accept Novant's description of LNR as a dangerous hospital, the Court clearly found that LNR had numerous current *and* future competitive challenges that will likely lead to its closure. Moreover, in its Motion, the FTC insists (as it did during the hearing) on shoehorning the Court's holistic but detailed analysis into various rigid doctrinal pigeonholes, ignoring the bigger picture and actual competitive circumstances that informed the Court's ruling. *See FTC v. Arch Coal, Inc.*, 329 F. Supp. 2d 109, 154 (D.D.C. 2004) (the "weakness [of the to-be-acquired firm] undermines the predictive value of the government's market share statistics"). Each case is different and this case must be resolved based on the Court's factual findings and best judgment as to how the transaction will immediately impact patients, their families and the important public interests at stake here, not just legal presumptions and platitudes borrowed from other cases.

Most significantly, the FTC completely ignores the Court's "weighing of the equities," which is a fundamental *statutory* step towards determining the overall "public interest" in Section 13(b). Indeed, even if the Court had found that the FTC had shown a slight ultimate likelihood of

success according to the FTC's suggested standard, it would nevertheless have denied the request for a preliminary injunction based on its view of the equities and their impact on the public interest. As described in the Order, the Court found that the equities clearly favor denying an injunction. If Novant is not permitted to buy the hospitals, Davis will close "immediately" [2], Tr. 1574-77, and certainly within the time frame of even an "expedited" appeal (however long that might take in such a complex matter). Closing Davis will result in the loss of critically needed inpatient psychiatric services, visiting real harm, not theoretical competitive harm, on numerous patients and their families. Also, allowing the transaction to proceed will quickly benefit LNR patients and the community by adding important medical lines of service that have been lost as well as improving nurse and physician staffing, which was described as being in a "very fragile, vulnerable state." Tr. 725-26. Therefore, the weighing of the equities fully supports the Court's ruling, regardless of its assessment of the FTC's likelihood of success, which the Court believes to be correct in any event.

### B. Irreparable Harm to the FTC

In contrast to the harm that will follow an injunction, there will likely be no actual, immediate competitive harm if Novant begins to operate Davis and LNR. With respect to insurance rates, the FTC's motion incorrectly assumes that rates will rise despite Novant's agreement not to raise rates at LNR for three years (which the Court found credible but the FTC fails to even mention). Further, the FTC speculates that divestiture is not a viable possibility in the future. Yet, the Court found that Novant's promised improvements at LNR, even in the short term,

---

[2] For Davis to remain open, CHS would have to be willing to continue to lose $1million a month, which they testified they would not do if the transaction was unable to go forward. Tr. 1576-77. The Court found this testimony credible in light of CHS' history of closing hospitals and ongoing financial difficulties.

would make the hospital more, not less, attractive to potential buyers. And, demonstrating again that the FTC is focused on other circumstances that have no application here, it cites *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 352-53 & n.11 (3d Cir. 2016), noting that "unscrambling the egg" is difficult after "Defendants have integrated their operations, shared competitively sensitive confidential information, and laid off staff." But, those are simply not the facts here. CHS is selling its only two hospitals in North Carolina to Novant – not "integrating their operations or sharing competitively sensitive confidential information." And, Novant intends to add rather than lay off staff. Moreover, the sharing of confidential information after the hospitals are sold would, if anything, be pro-competitive after a divestiture because the staff at LNR would know Novant's "playbook" and be better able to compete against Novant.[3]

C. **Injury to "Other Parties"**

Novant and CHS will be harmed by a stay because they have already delayed the consummation of the sale for some time and their willingness to proceed with the transaction if another indeterminate injunction is entered is uncertain. *See* Doc. No. 240 at 2, 9. Additionally, the "other parties" harmed are the patients, doctors, staff and other community members who rely on the hospitals for care, employment and as a community resource. As discussed above, the Court finds that it is in their best interests that Novant be permitted to purchase and operate Davis and LNR during the FTC administrative process.

---

[3] In light of CHS' current weak competitive position, whatever confidential information, if any, that Novant might glean from CHS (again, in a situation where it is just buying an asset of a company not the company itself) is highly unlikely to have any current competitive effect. Rather, Novant was very clear about its intent to run LNR and Davis under Novant's standards of operation not CHS'.

5

### D. The Public Interest

As discussed above (and extensively in the Order), the public interest is best served by denying the requested injunction. Simply put, the public (including patients, doctors, nurses and the community) are better served by Novant operating Davis and LNR while the litigation goes forward rather than CHS closing Davis and running LNR on a shoestring. No public interest will be served by a stay.

### III. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiff's Rule 62(d) Motion for Injunction Pending Appeal (Doc. No. 238) is **DENIED**; however,

2. The date / time on which the Temporary Restraining Order ends, (Doc. No. 16), is extended and set for 12:00 p.m. on June 21, 2024, which will allow time for the FTC to seek an injunction against Novant's purchase of Davis and LNR from the Fourth Circuit Court of Appeals.[4]

---

[4] Although the Order denying the Preliminary Injunction was issued on June 5, 2024, the FTC waited until after 12:00 p.m. on June 10, 2024 to seek an injunction pending appeal, which (perhaps intentionally) created a situation in which had this Court simply denied the Motion – as would have been its preference – the Court of Appeals would have had at most only a single day to consider the FTC's injunction request. This Court will not put the Court of Appeals under that time pressure; rather, it will defer the earliest date of the closing to ten days from this ruling to allow the Court of Appeals a more reasonable period of time to consider the FTC's so-called "emergency" motion. This, of course, assumes that the FTC will, as it has represented, immediately file a motion seeking an injunction with the Court of Appeals and not put that Court in the same difficult time position it has put this Court.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: June 11, 2024

Kenneth D. Bell
United States District Judge